ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@rossllp.la
Eric Lauritsen (State Bar No. 301219)
  elauritsen@rossllp.la
1900 Avenue of the Stars, Suite 1225
Los Angeles, California 90067
Telephone: (424) 704-5600
Facsimile: (424) 704-5680

Attorneys for Plaintiffs SHAQUILLE
O'NEAL and JEROME CRAWFORD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SHAQUILLE O'NEAL, an individual, and JEROME CRAWFORD, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>DARON CAMPBELL, an individual; DARON CAMPBELL CAPITAL, LLC, a California limited liability company; VICEROY, LLC, a California limited liability company; and DOES 1-20,<br><br>Defendants. | Case No. 2:21-cv-09158-ODW-PLA<br><br>Hon. Otis D. Wright<br><br>**PLAINTIFFS' MOTION FOR A RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT**<br><br>[Filed concurrently with Declaration of Shaquille O'Neal and Proposed Order]<br><br>Date: August 29, 2022<br>Time: 1:30 p.m.<br>Courtroom: 5D |

PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 29, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5D of the United States District Court for the Central District of California, located at 350 W. First Street, Los Angeles, CA 90012, plaintiffs Shaquille O'Neal and Jerome Crawford (collectively, "Defendants") will and hereby do move the Court for a right to attach order and writ of attachment against defendants Daron Campbell ("Campbell"), Daron Campbell Capital LLC ("Capital"), and Viceroy, LLC ("Viceroy," and together with Campbell and Capital, "Defendants").  As explained in the attached memorandum of points and authorities, Plaintiffs are entitled to a writ of attachment against Defendants in the amount of $130,000.00, which amount does not include any portion for costs or attorney fees.  Attachment is sought to secure recovery on a claim upon which attachment may issue under section 483.010 of the California Code of Civil Procedure.  Attachment is not sought for a purpose other than the recovery on a claim upon which the attachment is based.  Plaintiffs have no information or belief that the claim is discharged or the prosecution of the action is stayed in a proceeding under title 11 of the United States Code (Bankruptcy).  The facts showing Plaintiffs are entitled to a judgment on the claim upon which this motion is based are set forth with particularity in the memorandum of points and authorities appended hereto. Plaintiffs are informed and believe that the following property sought to be attached for which a method of levy is provided is subject to attachment: (i) for Campbell, a bank account with JP Morgan Chase Bank NA in the name of Capital which Campbell uses to pay his personal debts; (ii) for Capital and Viceroy, all corporate property which is subject to attachment pursuant to subdivision (a) of California Code of Civil Procedure Section 487.010.  Plaintiffs are informed and believe that the property sought to be attached is not exempt from attachment.

This motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations of Shaquille

O'Neal and Eric C. Lauritsen and exhibits thereto, all the pleadings, papers, and records on file in this action, and upon such further and additional evidence and argument as may be submitted at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 20, 2022.

DATED: July 28, 2022                ROSS LLP
                                    Peter W. Ross
                                    Eric C. Lauritsen


                                    By:   */s/ Peter W. Ross*
                                          Peter W. Ross
                                    Attorneys for Shaquille O'Neal and Jerome Crawford

## I. PRELIMINARY STATEMENT

Plaintiffs Shaquille O'Neal ("O'Neal") and Jerome Crawford ("Crawford," and together with O'Neal, "Plaintiffs") and Defendant Daron Campbell ("Campbell") are parties to a contract wherein Campbell agreed to repurchase Plaintiffs' shares in Defendant Viceroy, LLC ("Viceroy") for a combined purchase price of $150,000. On November 5, 2018, Campbell paid each of O'Neal and Crawford $10,000 pursuant to the contract. The payments were made via cashier's check from a Chase Bank account in the name of Defendant Daron Campbell Capital, LLC ("Capital," and together with Campbell and Viceroy, "Defendants") and listed "Buyout pymt 1" on the memo line. Despite Campbell's commitments in the contract to provide recurring payments in that amount on the first day of each calendar quarter until the purchase price had been paid in full, however, no further payments have been forthcoming. As such, Campbell remains contractually indebted to Plaintiffs in the amount of $130,000.

Plaintiffs are entitled to a right to attach order and a writ of attachment in this amount because, as demonstrated below: (1) their contract claims are ones upon which an attachment may be issued; (2) their claims are probably valid; (3) they do not seek attachment for a purpose other than the recovery on their claims; and (4) the amount to be secured is greater than zero.

## II. FACTUAL BACKGROUND

Beginning around December 2016, Plaintiffs and Campbell began discussing the possibility that Plaintiffs would invest in Viceroy, an entity that Campbell had ostensibly established to pursue business opportunities in the field of legal cannabis. Declaration of Shaquille O'Neal ("O'Neal Decl.") at ¶ 3. These discussions culminated in Plaintiffs investing a combined $150,000 in Viceroy, with $100,000 coming from O'Neal and $50,000 coming from Crawford, on or around February 1, 2017. *Id*. Some time later, questions arose regarding Campbell's management of Viceroy and use of the invested funds, as the company still had no apparent licenses,

revenues, or operations of any kind. *Id*. at ¶ 4. After Campbell proved unable to allay Plaintiffs' fears as to these topics, in the summer of 2018, he offered to repurchase their shares for the full $150,000 purchase price via quarterly payments of $10,000 to each of O'Neal and Crawford. *Id*.; *see also* Answer, Dkt. 14, at ¶ 16 (admitting Plaintiffs' allegations as to contract terms and formation). Plaintiffs accepted Campbell's offer, and Campbell commenced performance shortly thereafter. O'Neal Decl. at ¶ 5. Specifically, on or around November 5, 2018, Campbell delivered one cashier's check for $10,000 to O'Neal's representatives and another cashier's check for $10,000 to Crawford's representatives. *Id*. at ¶ 5, Ex. A. Despite Campbell's assurances, however, no further payments have been made to date. *Id*. at ¶ 6; *see also* Answer, Dkt. 14, at ¶ 16 (admitting that no payments have been made since November 5, 2018).

Plaintiffs commenced this action on November 22, 2021, and have asserted a claim against Campbell for breach of contract based on his failure to pay the full $150,000 contract price, as well as a claim against all Defendants for breach of fiduciary duties based on the mismanagement of Viceroy. Dkt. 1.

### III. ARGUMENT

Under California law, plaintiffs are entitled to prejudgment writs of attachment if they can establish that: (a) their claim is one upon which an attachment may be issued; (b) their claim has "probable validity;" (c) the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based; and (d) the amount to be secured is greater than zero. Cal. Code Civ. Proc. § 484.090(a). The Federal Rules of Civil Procedure require that courts in this District follow California's rules in this area. *See* Fed. R. Civ. Proc. 64 (making available "every remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment"); *see also, e.g., Pos-a-Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F. Supp. 2d 1178 (C.D. Cal. 2000) (granting application for right to attach

order and writ of attachment).

As shown below, Plaintiffs meet the foregoing requirements, and their motion should therefore be granted.

### A. **Plaintiffs' Contract Claim Is One Upon Which An Attachment May Be Issued**

The first requirement for a writ of attachment to issue—that the claim be eligible for attachment in the first place—is itself governed by a multi-factor test. Namely, a claim is one on which an attachment may be issued if: (1) the claim is for money based on a contract, express or implied; (2) the amount sought is fixed or readily ascertainable and not less than $500; (3) it is not secured by real property; and (4) it is a commercial claim if the non-moving party is a natural person. *Code Civ. Proc.* § 483.010(a)-(c). Each of these requirements is satisfied here.

#### 1. **Plaintiffs' First Claim Is Based On A Contract**

As described above, Plaintiffs have asserted a claim against Campbell based upon his breach of a contract between the parties, the terms of which he acknowledges and admits in his Answer. There thus appears to be no dispute that this first element is satisfied.

#### 2. **The Attachment Amount Is Fixed And Readily Ascertainable**

"It is a well-recognized rule of law in California that an attachment will lie upon a cause of action for damages for a breach of contract where the damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite." *Cit Group/Equipment Financing, Inc. v. Super DVD, Inc.,* 115 Cal.App.4th 537, 540 (2004) (quoting *Lewis v. Steifel*, 98 Cal.App.2d 648. 650 (1950)). Here, the contract at issue was for the payment of a sum certain—$150,000—and Defendants admit that Campbell only in fact paid $20,000 towards this figure. *See* Answer, Dkt. 14, at ¶¶ 16-18 (admitting that only two checks for $10,000 were ever tendered against a total debt of $150,000). As such, the $130,000 that Plaintiffs seek to attach is calculated via a quintessentially

-6-
PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

reasonable, definite, and obvious method. This element is thus satisfied as well.

### 3. Plaintiffs' Claim Is Not Secured By Real Property

Plaintiffs' contract claim is not secured by real property, so this element is likewise satisfied without issue. O'Neal Decl. ¶ 7.

### 4. Plaintiffs' Contract Claim Is Commercial In Nature

Plaintiffs' contract claim against Campbell is commercial in nature, as it involves the exchange of shares in an entity engaged in a business enterprise. *See* Cal. Code Civ. Proc. § 483.010(c) (noting that attachments may be issued against individuals in connection with their activities related to "a trade, business, or profession"). Indeed, the commercial nature of the transaction is underscored by the fact that the checks that Campbell delivered to Plaintiffs pursuant to it were paid via the accounts of Capital, not his personal account. As such, this element is likewise satisfied, thus completing all required showings to establish that Plaintiffs' claim is one upon which an attachment may issue.

## B. Plaintiffs' Contract Claim Has Probable Validity

Plaintiffs next must establish that their contract claim has "probable validity" to obtain their requested attachment. "To show probable validity on their breach of contract claim, Plaintiffs must establish by a preponderance of the evidence 'the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages.'" *Albergo v. Immunosyn Corp.*, No. 09-cv-2653-DMS, 2011 WL 13177540 at *3 (S.D. Cal. July 13, 2011) (quoting *First Comm. Mortg. Co. v. Reece*, 89 Cal.App.4th 731, 745 (2001)).

Here, it is indisputable that: (1) there was a valid contract between the parties; (2) Plaintiffs' performed the material terms thereof; (3) Defendants' breached their payment obligations; and (4) Plaintiffs suffered damages as a result of Defendants' breach. With respect to the existence of the contract, again, Defendants admit that element in the Answer. With respect to Plaintiffs' performance, all that was required of them was their tendering of their shares to Defendants, which they did in

exchange for the agreed upon purchase price. With respect to Defendants' breach, again, Defendants do not appear to dispute that they paid only $20,000 towards an agreed upon $150,000 purchase price. And with respect to damages, Plaintiffs were supposed to receive $150,000 and in fact received only $20,000; the difference constitutes damages.

Defendants assert a shotgun list of affirmative defenses, but none of them apply. The least frivolous might be the statute of limitations, as Defendants' first missed payment was in the beginning of 2019, which may appear at first blush to place Plaintiffs' claims beyond the two year statute of limitations that applies to oral contracts, at least as it relates to the first few missed payments. Cal. Code Civ. Proc. § 339. However, the California Supreme Court case of *Amen v. Merced Cnty. Title Co.*, 58 Cal.2d 528, 532 (1962) makes clear that for statute of limitations purposes, the parties' contract is in fact subject to the four year limitations period that applies to written contracts, not the two year limitations period that applies to oral ones. *Compare* Cal. Code Civ. Proc. § 337 (four year statute of limitations for written contracts) *with* Cal Code Civ. Proc. § 339 (two year statute of limitations for oral contracts). In *Amen*, the plaintiff, who had purchased a tavern from a third party, pursued a contract claim against the escrow company rendering services in connection with the sale based on the company's failure to inform her of certain tax issues in accordance with written instructions provided to the escrow company by the parties to the transaction. *Amen*, 58 Cal.2d at 530-31. The escrow company demurred on the grounds that it had never signed or otherwise agreed to be bound by the instructions in writing and its alleged breach had occurred more than two years before, so the plaintiff had missed her deadline to sue for the breach of an oral contract. The court rejected the argument and treated the instructions as a written contract between the plaintiff and the defendant escrow company, stating, "The contract may be 'in writing' for purposes of the statute of limitations even though it was accepted orally or by an act other than signing." *Id.* at 532. Applying this rule

in this case compels conclusion that, here too, the four year limitations period should apply. Indeed, as in *Amen*, the details of the contract were provided in writing, via Campbell's email. Even though they were accepted by Plaintiffs orally or via their conduct, therefore, the contract should be considered written for statute of limitations purposes. As a result, neither this nor any other affirmative defense in fact applies to negate Plaintiffs' claim, and the claim thus retains its probable validity.

### C. The Motion Is Based On A Proper Purpose

Next, Plaintiffs must establish that their motion is motivated by proper purposes. Plaintiffs' intentions are indeed simply to recover the sums to which they are rightfully entitled, so this factor is likewise met. O'Neal Decl. at ¶ 2.

### D. The Amount to be Secured is Greater Than Zero

Finally, the amount to be secured is $130,000, which is obviously greater than zero. This final requirement, like all of the others, is therefore satisfied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue a Right to Attach order and a Writ of Attachment against Defendants in the amount of $130,000.

DATED: July 28, 2022        ROSS LLP
                            Peter W. Ross
                            Eric C. Lauritsen

                            By:  */s/ Peter W. Ross*
                                 Peter W. Ross
                            Attorneys for Shaquille O'Neal and Jerome Crawford